Bernard S. Meyer, J.
One of the anomalies in the law of status produced by a peripatetic population in a federal system is the divisible divorce: when a forum with jurisdiction over one of the marital partners grants an ex parte divorce to that partner, its judgment must be given effect everywhere as severing the personal, though not the economic, aspects of the marriage. To that aberration there is now added, as an *841 unidentical twin, the mutilated marriage: when a forum with jurisdiction over neither of the marital partners grants a divorce on the personal appearance of the husband and the wife’s appearance by attorney and thereafter, at the instance of the wife, sets the divorce decree aside as fraudulently obtained, and in the period between the first and second judgments, the husband marries a woman who was not involved in and is not shown to have knowledge of the fraud, the second judgment must be given retroactive effect so as to reinstate the economic, but not the personal, aspects of the first marriage.
This action for a declaratory judgment is the fifth litigation between plaintiff wife and defendant husband. Plaintiff prays for judgment declaring that she is the lawful wife of defendant husband, that he and defendant Begina Anna Furrer are not husband and wife, that he be required to support plaintiff and that he and Begina Amia Furrer provide counsel fees and disbursements for prosecution of this action. Defendants by their answer join in the request for a declaratory judgment and counterclaim for a declaration that the Alabama decree of August 25, 1965 vacating the February 25, 1960 decree divorcing plaintiff and defendant husband is not entitled to recognition, that plaintiff is not the lawful wife of defendant husband, and that he and Begina Anna Furrer are legally married. When the case came on for trial, certain facts were stipulated and exhibits marked and it was agreed that the court files of the earlier Nassau litigations were before the court. From the stipulation, exhibits and records of the earlier Nassau litigations, the court finds the facts set forth in the following three paragraphs.
Caught in a motel raid on February 13, 1960, plaintiff on February 22, 1960, acting with advice of counsel, signed a separation agreement, a power of attorney and an answer in an Alabama divorce proceeding. On February 25, 1960 on the personal appearance of defendant, he, as plaintiff in a divorce action brought in Winston County, Alabama, was granted a decree of divorce from the present plaintiff, the decree ratifying and confirming the February 22, 1960 separation agreement. On June 25, 1960, defendant husband and Begina Anna Furrer were married. On November 2, 1960, plaintiff began an action in Supreme Court, Nassau County (Index No. 13130/60) against defendant husband alone, alleging that the motel raid had been staged through a conspiracy between defendant and the man with whom she had been found in the raid and that her consent to the separation agreement and the Alabama divorce papers had been procured by fraud and duress, *842 and praying that the separation agreement be set aside, the Alabama divorce be declared void and that she be granted a separation. On March 23, 1961, when that action came on for trial, plaintiff entered into a stipulation of record, and confirmed in answer to questions by the court and by her counsel that she understood and agreed to it, whereby she discontinued the action, confirmed the validity of the Alabama divorce and modified the separation agreement so that she became the sole owner of the marital residence, and as modified confirmed the separation agreement. Thereafter, defendant turned over to plaintiff a deed to his interest in the residence.
In June 1962, plaintiff began a second action in Nassau County, Supreme Court (Index No. 991/63) alleging that the separation agreement of February 22, 1960 was obtained by fraud and duress and was void as in violation of former section 51 of the Domestic Relations Law, that the stipulation settling the earlier action was void for the same reason, that the Alabama divorce was likewise invalid, and praying that she be granted a separation, custody and support. The matter was tried and resulted in a decision stating that ‘ ‘ the Court cannot find that the plaintiff, who was represented by counsel, did not voluntarily and knowingly appear in the Alabama action ’ ’ and dismissing the separation action on the ground that the Alabama decree was conclusive “since the plaintiff appeared in the Alabama divorce action and had been given the opportunity to litigate the question of defendant’s domicile.” That portion of the separation agreement waiving support for plaintiff was, however, held void under former section 51 of the Domestic Relations Law, but there being no proof of defendant’s income or assets, plaintiff’s demand for alimony was dismissed without prejudice. The judgment entered January 27, 1964 adjudged “ that the action for separation based upon the invalidity of the Alabama Divorce Decree is dismissed.”
In January, 1965, plaintiff, as complainant in an original bill in the nature of a bill of review filed in Winston County, Alabama, sought a decree vacating the divorce decree of February 25, I960 and restoring her to the marital status dissolved by it, alleging that neither she nor defendant had ever been domiciled in or a resident of Alabama, and that she signed the papers in the 1960 divorce action under the threat of physical abuse and of injury to her reputation by exposing photographs framed or set up by defendant in which plaintiff would appear to be in an adulterous situation. Summons by registered mail together with a copy of the bill of review in the 1965 Alabama action and the proceedings in the 1960 Alabama *843 divorce action were served on defendant in New York, and he admits receipt of them. Defendant did not appear in the 1965 Alabama action. The bill of review before the Alabama court did not reveal to that court the plaintiff’s 1961 stipulation, nor did it disclose the January 27, 1964 judgment of this court or the decision on which it was based. A decree dated May 25, 1965 was entered by the Alabama court vacating the 1960 decree of divorce and restoring plaintiff to the marital status dissolved by that decree. On September 29,1965, plaintiff began the present action. Only the bill of review and the Alabama court’s decree are before this court, but the parties have stipulated that the Winston County Judge wrote no opinion and that the present action may be determined without a transcript of the evidence presented to the Alabama court.
Defendants argue that the second Alabama decree is not entitled to recognition in New York because (1) defendant husband did not appear before the Alabama court and it, therefore, had no jurisdiction over him, (2) the decree was procured by plaintiff’s fraud in withholding from the Alabama court information concerning her stipulation in the 1961 New York action and the 1964 New York judgment, and (3) the decree is inconsistent with the 1964 New York judgment.
The contention that the Alabama court was without jurisdiction overlooks the fact that it was defendant who instituted the 1960 Alabama divorce action. Under Alabama law, a bill in the nature of a bill of review may, though it need not necessarily, be filed in the court which rendered the decree that it is sought to have vacated, service by registered mail outside the state is permitted, and jurisdiction continues in the Alabama courts u to get rid of judgments and decrees which fugitives have procured from them by fraud” (Hooke v. Hooke, 247 Ala. 450, 454). Clearly, there is no constitutional objection to continuing jurisdiction for such a purpose, for “ The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff ” (Adam v. Saenger, 303 U. S. 59, 67-68; see Restatement, Conflict of Laws 2d [Proposed Official Draft], § 34). Of course, there must be adequate notice to the former plaintiff of the subsequent proceeding (Griffin v. Griffin, 327 U. S. 220; Leman v. Krentler-Arnold Co., 284 U. S. 448, 454; Michigan Trust Co. v. Ferry, 228 U. S. 346), but defendant husband admits having received *844 the summons, bill of review and attachments served in the 1965 proceeding, and since he defaulted in that proceeding there was no constitutional requirement that he receive notice of subsequent steps, so long as they were within the framework of the bill of review served upon him (John v. John, 16 N Y 2d 675, revg. on the dissenting opinion below, 22 A D 2d 804, remittitur amd. 16 N Y 2d 825, app. dsmd. for want of jurisdiction and, treated as an application for certiorari, cert. den. 382 U. S. 371).
Though the Alabama court had jurisdiction to render the 1965 judgment, its judgment is subject to collateral attack in New York for fraud, if under the law of Alabama it would be subject to attack for fraud, for “ a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered ’ ’ (Halvey v. Halvey, 330 U. S. 610, 614; see, also, Johnson v. Muelberger, 340 U. S. 581; Weisner v. Weisner, 17 N Y 2d 799, 802; Restatement, Conflict of Laws 2d [Proposed Official Draft], § 115 and Comments c and d; Ann. 55 ALR 2d 673). The usual rule is that a decree may be set aside, even though the time for appeal has expired, on the ground of extrinsic but not intrinsic fraud (Restatement, Conflict of Laws 2d [Proposed Official Draft], § 115, Comment d). Fraud is extrinsic when it is collateral to the matter decided by the court and deprives the opposing party of an opportunity adequately to present his claim or defense, as where a defendant is induced not to defend by a false promise to discontinue the action (see Ann. 88 A. L. R. 1201; 55 ALR 2d 673, 686). It is intrinsic when it relates to the very matter decided by the court, as when perjured testimony is produced. Examination of Alabama law discloses that it follows the usual rule, both generally and in divorce matters. Thus, Alabama courts have refused to set aside judgments procured on perjured testimony (Heller v. Heller, 272 Ala. 429; Hooke v. Hooke, 247 Ala. 450, supra; Sloss-Sheffield, Steel & Iron Co. v. Lang, 213 Ala. 412; DeSota Coal Min. & Dev. Co. v. Hill, 194 Ala. 537), but have set aside judgments based on fraud going to the jurisdiction of the court, as when a false or fraudulent statement in the petition was necessary to invoke the power of the court to render the decree under attack (Hooke v. Hooke, supra [divorce action; bill alleged 12 months’ residence, plaintiff and defendant were in fact nonresidents; 12 months’ residence a jurisdictional requirement when defendant a nonresident]; Bolden v. Sloss-Sheffield Steel & Iron Co., 215 Ala 334 [compensation claim; petitioner falsely alleged that she was wife of deceased employee, held (p. 335): the “ very existence of the cause of action was simu *845 lated ”]; Keenum v. Dodson, 212 Ala. 146 [widow claiming homestead falsely represented she was only heir; in fact there were minor children; under statute court without jurisdiction to award homestead to wife where there were minor children]; see Reese, Grounds for and Method of Setting Aside an Alabama Divorce, 37 N. Y. S. B. J. 345, 351). The fraud of which plaintiff stands accused with respect to the 1965 Alabama decree is the withholding from the Alabama court of the existence of her stipulation in the 1961 New York action that the 1960 Alabama judgment was valid and of the possible res judicata effect of the 1964 New York judgment. Defendant was aware from the bill of review served upon him that these matters had not been made known to the Alabama court. Neither in any way affected the jurisdiction of the court, which was based solely on defendant’s earlier acts in Alabama. Defendant was not deprived by any act of plaintiff from raising the 1961 stipulation and the 1964 judgment as defenses (see Hardeman v. Donaghey, 170 Ala. 362). Such fraud as infects the 1965 Alabama decree was, therefore, intrinsic rather than extrinsic (see Chenu v. Board of Trustees of Police Pension Fund, 12 A D 2d 422, affd. 11 N Y 2d 688) and furnishes no basis for attack upon that decree.
The contention based upon the inconsistency of the 1965 Alabama decree with the 1964 New York judgment presents somewhat more of a problem. The general rule is that ‘ ‘ Where in two successive actions between the same parties inconsistent judgments are rendered, the judgment in the second action is controlling in a third action between the parties ” (Restatement, Judgments, § 42) and this rule applies whether the latter judgment is rendered in the same or a different State and even though the court rendering the second judgment failed to give full faith and credit to the first (Restatement, Conflict of Laws 2d [Proposed Official Draft], § 114, Comment a). Cases supporting the rule include Treinies v. Sunshine Mining Co. (308 U. S. 66, 77); Lynn v. Lynn (302 N. Y. 193, cert. den. 342 U. S. 849); Chenu v. Board of Trustees (12 A D 2d 422, affd. 11 N Y 2d 688, supra); Southard v. Southard (305 F. 2d 730); see Perkins v. De Witt (279 App. Div. 903). The rationale of the rule is that the opportunity exists in the second action to litigate the res judicata effect of the first judgment and to appeal from the judgment of the second court (Restatement, Conflict of Laws 2d [Proposed Official Draft] § 114, Comment b). Defendant may have believed that he was faced with the dilemma of either defaulting in the bill of review proceeding and permitting a decree pro confesso to be taken or appearing and running the risk that testimony might be adduced justifying *846 the Alabama court under the rule of Hartigan v. Hartigan (272 Ala. 67) in setting aside the 1960 divorce decree on its own motion because neither plaintiff nor defendant in that action was a bona fide Alabama resident (see Reese, op cit., 37 N. Y. S. B. J. 345, 350, supra). It is, however, by no means clear that the dilemma was real, for it was open to defendant had he appeared in the 1965 action to object to the presentation of evidence concerning the bona fides of his Alabama residence and to confine the issue to whether plaintiff’s appearance in the 1960 action had been obtained by fraud or duress (Aiello v. Aiello, 272 Ala. 505). Moreover, even if that were not so, defendant had the opportunity in the 1965 Alabama action to litigate the res judicata effect of the 1964 New York judgment except as his own fraud in the 1960 Alabama action made it dangerous for him to do so, and cannot be permitted to use the danger arising out of that fraud to his own advantage (see Lewis v. Lewis, 311 P. 2d 917, 926, revd. on other grounds 49 Cal. 2d 389).
The difficulty with application of the two inconsistent judgments rule is not any lack of opportunity for defendant to litigate the issue, but the existence of a line of cases holding that where the third action is brought in the State which rendered the first judgment, the full faith and credit clause does not compel the court to give greater faith and credit to the sister State judgment rendered in the second action than to its own judgment in the first action (Porter v. Porter, 101 Ariz. 131, cert, den. 386 U. S. 957; Colby v. Colby, 78 Nev. 150; cert. den. 371 U. S. 888; Perry v. Perry, 51 Wn. [2d] 358; Wallihan v. Hughes, 196 Va. 117; Kessler v. Fauquier Nat. Bank, 195 Va. 1095, cert. den. 348 U. S. 834; Hammell v. Britton, 19 Cal. 2d 72; Martin Bros. Box Co. v. Fritz, 228 Iowa 482). Certain of those cases are distinguishable on the facts and certain of them have been criticized by commentators, see Rodgers & Rodgers, The Disparity Between Due Process and Full Faith and Credit, 67 Col. L. Rev. 1363, 1384 and Notes: 52 Georgetown L. J. 572, 592; 31 Geo. Wash. L. Rev. 648; 15 Stan. L. Rev. 331; 68 Harv. L. Rev. 719; 9 Ariz. L. Rev. 88. Without pausing to analyze the cases in detail, the court concludes that the parochial attitude which they demonstrate is neither the law of New York nor a correct interpretation of the full faith and credit clause.
New York law on the point is stated in Lynn v. Lynn (302 N. Y. 193, cert. den. 342 U. S. 849). In that case, plaintiff wife obtained a New York separation, and thereafter appeared and defended her husband’s Nevada action for divorce. The Nevada court overruled her objection to its jurisdiction and granted *847 her husband a judgment of divorce which made no provision for her support. Sometime thereafter plaintiff moved in the New York action for an increase in alimony and defendant set up the Nevada divorce as a complete defense. Special Term denied the application but the Appellate Division reversed, one of its grounds being that New York was not required to give full faith and credit to the Nevada decree because the Nevada court failed to give full faith and credit to the prior New York separation judgment. Reversing the Appellate Division determination, the Court of Appeals stated (p. 201): “ And even if we were to accept the view of the Appellate Division that the Nevada court, in decreeing the divorce failed to give appropriate effect to the adjudication made in the New York action, the courts of this state would still be required to accord full faith and credit to the Nevada decree. Nevada’s asserted denial of full faith does not justify or permit retaliation by any other state. As the decisions make plain, plaintiff’s only remedy to correct the alleged error was by direct appeal from the Nevada judgment through the Nevada courts and, if necessary, to the Supreme Court of the United States. ’ ’
Also in point, and making indelibly clear the New York view that full faith and credit must be given a sister State judgment notwithstanding that it is inconsistent with an earlier New York judgment are Dobson v. Pearce (12 N. Y. 156) and Perkins v. De Witt (279 App. Div. 903); see, also, Hanna v. Stedman (230 N. Y. 326) and Everett v. Everett, (180 N. Y. 452, writ of error dsmd. 215 U. S. 203).
That the cases in question incorrectly interpret the full faith and credit clause is clear not only from the Lynn case, but also from the constitutional provision, the statute implementing it, and cases decided by the Supreme Court under it. Section 1 of article IV of the Constitution requires that “ Full Faith and Credit shall be given in each State to the * * * judical Proceedings of every other State ” (emphasis supplied), and Congress in implementing that provision has directed in section 1738 of title 28 of the United States Code that judgments ‘‘ shall have the same full faith and credit in every court within the United States * # * as they have by law or usage in the courts of such State * * * from which they are taken” (emphasis supplied). Thus, neither the language of the full faith and credit clause nor that of the implementing statute admits of the exception for prior forum judgments which the cases in question seek to establish. Moreover, the Supreme Court has made clear that it is no objection to the enforcement of a sister State judgment that it contravenes a statute of the *848 forum and would have been void if rendered in the forum (Roche v. McDonald, 275 U. S. 449) or that there exists a forum judgment appointing a statutory liquidator of the forum assets of the defendant in the sister State judgment (Morris v. Jones, 329 U. S. 545) or that the underlying claim would be barred by a Statute of Limitations of the forum (Christmas v. Russell, 5 Wall. [72 U. S.] 290). Why a prior forum judgment should be accorded greater recognition than a prior forum statute or policy is not readily apparent. Furthermore, the court has held ‘ ‘ that these provisions have made that which has been adjudicated in one state res judicata to the same extent in every other” (Magnolia Petroleum Co. v. Uunt, 320 U. S. 430, 438; emphasis supplied), and while it has stated that there may be exceptional cases in which the judgment of one State may not override the laws and policy of another, it has recognized no such exception with respect to a prior forum judgment. To the contrary, Sutton v. Leib (342 U. S. 402, 408) contains dictum that the invalidation by New York of a Nevada divorce must be given full faith and credit by Nevada; and see Everett v. Everett (215 U. S. 203). The 1965 Alabama judgment vacating the 1960 Alabama divorce decree must, therefore, be given full faith and credit even though the former be inconsistent with the 1964 New York judgment.
The discussion thus far assumes that the 1965 Alabama decree and the 1964 New York judgment reached opposite conclusions on the issue of fraud or duress in the procurement of plaintiff’s appearance in the 1960 Alabama action and are, therefore, in fact inconsistent. The papers before the court do not make that entirely clear and since the bill of review on which the 1965 decree is predicated specifically alleged the nonresidence in Alabama of both parties, it is conceivable that the basis of that decree was not fraud or duress in obtaining plaintiff’s 1960 appearance but defendant’s fraud on the court with respect to residence in the 1960 action. Such a holding would be a misapplication of the Hartigan principle (Multer v. Multer, 280 Ala. 458; Levine v. Levine, 262 Ala. 491; Note 52 Georgetown L. J. 572, 581) but such an error would not make the 1965 decree any the less entitled to full faith and credit (Milliken v. Meyer, 311 U. S. 457; Restatement, Conflict of Laws 2d [Proposed Official Draft], § 106). Of course, if the 1965 Alabama decree and the 1964 New York judgment are in fact not inconsistent, the holding of the Court of Appeals in Everett v. Everett (supra) establishes that it is the 1965 decree of vacatur that is to be applied (see, also, John v. John, 16 N Y 2d 675, supra; Magowan v. Magowan, *849 19 N Y 2d 296, 300 ; Restatement, Conflict of Laws 2d [Proposed Official Draft], § 112), and the Supreme Court’s, dismissal for want of jurisdiction of the appeal in the John case (382 U. S. 371) makes clear that there is no constitutional objection to doing so.
That the vacatur decree is to be applied does not, however, mean that plaintiff is entitled to a declaration that the defendants are not husband and wife or that defendant Regina Anna Di Russo is not entitled to judgment on the counterclaim adjudging her to be the wife of Fortunato Di Russo. The grant or denial of a declaratory judgment rests in sound judicial discretion. As against Regina Di Russo, plaintiff’s demand for judgment declaring that defendants are not husband and wife does not state a cause of action (Garvin v. Garvin, 306 N. Y. 118, 122), because a judgment declaring plaintiff’s status sufficiently protects plaintiff’s interests and makes unnecessary any declaration concerning what Regina Di Russo’s status is not (Somberg v. Somberg, 263 N. Y. 1; Baumann v. Baumann, 250 N. Y. 382).
A further reason why plaintiff is not entitled to a declaration that defendants are not husband and wife is that Regina Di Russo is entitled to judgment on the counterclaim. Plaintiff has neither pleaded nor contended that Regina Di Russo had knowledge of any possible defect in the 1960 Alabama divorce, when, in June, 1960, she married Fortunato Di Russo, and at that time plaintiff was estopped by her Alabama appearance from contesting the divorce (Sherrer v. Sherrer, 334 U. S. 343; Coe v. Coe, 334 U. S. 378; Boxer v. Boxer, 7 A D 2d 1001, affd. 7 N Y 2d 781) or from seeking an affirmative declaration that defendants were not husband and wife (Schneider v. Schneider, 232 App. Div. 71, on second appeal 238 App. Div. 792, affd. 263 N. Y. 641). The Alabama divorce was not void on its face, but only voidable upon additional facts adduced before the Alabama court (Aiello v. Aiello, 272 Ala. 505, supra; Hartigan v. Hartigan, 272 Ala. 67, supra). Since Regina Di Russo was not a party to the 1965 Alabama proceeding, she is not, as is Fortunato Di Russo, estopped by the res judicata effect of the judgment of vacatur from relying upon plaintiff’s 1960 appearance and 1961 stipulation. Sutton v. Leib (342 U. S. 402, 410) establishes that as a matter of constitutional law, New York is free to decide for itself the effect of the Alabama vacatur judgment on the rights and obligations of Regina Di Russo, a stranger to that judgment, and that the full faith and credit clause does not require New York to treat the legal fiction of relation back in like manner as does Alabama. *850 In the opinion of the court (and wholly apart from any estoppel against plaintiff, which could not in any event validate defendants’ marriage [Krause v. Krause, 282 N. Y. 355; see Note: 36 St. John’s L. Rev. 126, 142; cf. Clark, Estoppel Against Jurisdictional Attack on Decrees of Divorce, 70 Yale L. J. 45, 58]), absent any such constitutional requirement, neither legal nor social policy mandates relation back of the vacatur judgment so as to invalidate Regina Di Russo’s status as the wife of Fortunato. It is hardly to be expected that after seven years of divorce and as many of vigorous litigation there is any hope that the marriage between plaintiff and Fortunato can be rehabilitated; it appears, therefore, that greater social benefit will accrue from recognizing the remarriage than from denying it recognition (Clark, loc. cit. supra; see Goodloe v. Hawk, 113 F. 2d 753, 757). Separability of the various rights that arise out of marriage from the marital status itself has long been recognized (Vanderbilt v. Vanderbilt, 354 U. S. 416; Sutton v. Leib, supra; Estin v. Estin, 334 U. S. 541; Anello v. Anello, 22 A D 2d 694; Huber v. Huber, 26 Misc 2d 539) with the result that a man freed by ex parte divorce to marry a second wife nonetheless continues (except in the State granting the ex parte divorce [Simons v. Miami Beach Nat. Bank, 381 U. S. 81]) married to his first wife for purposes of support, property interests, inheritance and the like (see, also, Krause v. Krause, supra, which reaches an essentially similar result not as a matter of constitutional law, but on the basis of estoppel).
The interests of Alabama in getting rid of judgments obtained by fraud, of New York in protecting plaintiff from fraudulent termination of her economic interests in her marriage, and of New York in protecting Regina Di Russo’s status and economic interests in her marriage, valid at the time it was contracted, can all be accommodated (see Estin v. Estin, supra, p. 549) by the entry of judgment (1) declaring plaintiff restored to her status as the wife of Fortunato Di Russo insofar as her rights to support and other economic interests to which as his wife she is entitled, but not as to conjugal rights, (2) denying her prayer for judgment that defendants are not husband and wife, (3) dismissing the counterclaim insofar as it is on behalf of Fortunato Di Russo, and (4) awarding defendant Regina Anna Di Russo judgment on the counterclaim declaring her to be the wife of Fortunato Di Russo, and such a judgment will be entered herein.
As noted above, the complaint asks support from defendant husband and counsel fee from both defendants. Plaintiff’s motion for temporary alimony and counsel fee was denied on *851 the ground that section 236 of the Domestic Relations Law did not cover a declaratory judgment action and that paragraph (4) of subdivision (a) of section 237 of the Domestic Relations Law did not authorize award of counsel fee, since plaintiff had appeared in the Alabama action. The grant or refusal of temporary alimony does not constitute the law of the case any more than does the grant or refusal of a temporary injunction (see Walker Mem. Baptist Church v. Saunders, 285 N. Y. 462, 474; see, also, Frank v. Frank, 26 A D 2d 837). Clearly there is no legal basis for the demand for counsel fees from Regina Di Russo (Weicker v. Weicker, 28 A D 2d 138) and the court agrees that section 237 of the Domestic Relations Law does not authorize an award of counsel fee in an action to declare the nullity of a foreign divorce in which plaintiff appeared (see Cashman v. Cashman, 17 A D 2d 770; Beamish v. Atkins, N. Y. L. J., Dec. 24, 1963, p. 11, col. 7). While plaintiff’s Alabama appearance has been set at naught, the 1965 Alabama decree 1‘ could not obliterate the past and make events unreal ’ ’ (American Sur. Co. v. Conner, 251 N. Y. 1, 9; see Sutton v. Leib, 342 U. S. 402, 410-411). There is, therefore, no basis for a counsel fee award under section 237 of the Domestic Relations Law.
The Court of Appeals has now recognized, however, that under section 7 of article VI of the New York Constitution, when the Legislature creates a new cause of action jurisdiction to entertain it vests automatically in the Supreme Court (Matter of Seitz [Drogheo] v. Drogheo, 21 N Y 2d 181; Thrasher v. United States Liab. Co., 19 N Y 2d 159, 167; accord: Kagen v. Kagen, 28 A D 2d 734; People v. Davis, 27 A D 2d 299; Vazquez v. Vazquez, 26 A D 2d 701, mot. for lv. to app. granted 26 A D 2d 798). The Seits case applied that doctrine to authorize the Supreme Court to modify the alimony and support provisions of a foreign divorce decree because the Family Court has that power; the Vasques ease, to allow, notwithstanding the contrary holding in Gontaryk v. Gontaryk (20 A D 2d 633) under prior constitutional provision, an award for support of children in an action to declare a foreign divorce decree invalid. By a parity of reasoning there now exists authority in the Supreme Court to award support, separate and apart from any action for divorce, separation or annulment, since that authority is vested in the Family Court by sections 412 and 442 of the Family Court Act, and to award counsel fee in connection with the support determination since that authority is vested in the Family Court under section 438 of the Family Court Act. While that still would not authorize an award of *852 counsel fee for services in connection with this declaratory judgment action, the court will in the interest of justice and in view of the numerous motions, actions and proceedings by which support has heretofore been sought, grant plaintiff leave pursuant to CPLB 3025 (subd. [b]) to amend her complaint to state a cause of action for support and for counsel fees in connection with that cause of action, and, unless the parties are able to agree on the amount of support and counsel fee in connection therewith, will set the action down for trial on that cause of action.